## Commonwealth ex rel. Fausey v. Wiley

*Philip E. Jones,* for relatrix.

*William F. Heefner* and *Robert Farkas,* for respondents.

SATTERTHWAITE, J., September 13, 1957.—This habeas corpus proceeding involves the custody of an eight-year-old child, Dennisene Lynn Fausey. Relatrix, Margaret P. Fausey, is her mother, and respondents are Kenneth R. Fausey, the child's father, and Elmer Wiley and Ada Wiley, his wife. Kenneth and Margaret Fausey were married September 20, 1948. The latter had been a sort of foster child to the Wileys for a year or two prior thereto. Dennisene was born April 24, 1949, and since her parents were both employed and apparently in straitened financial circumstances, she has in fact lived with and been raised and largely supported by the Wileys at their home on Hillcrest Avenue, Morrisville, Bucks County, from the age of about three weeks continuously until the present time, with the exception of approximately six or seven months in 1956, as hereinafter mentioned. Both her parents, while they still lived together at various apartments in Trenton, N. J., and Morrisville, visited her at the Wiley home on frequent occasions and, in 1955 and 1956, had her with them on weekends.

Domestic difficulties having arisen, apparently commencing in the summer of 1955, relatrix separated from her husband in April of 1956 and joined her daughter in the Wiley home. In June 1956, when relatrix was recuperating from an illness and surgical operation, she left Morrisville, taking the child with her, and went to the home of her mother at Conemaugh, near Johnstown. Although this was originally intended as a merely temporary arrangement, relatrix has in fact continued to live in Conemaugh down to the time of the hearing, and her estrangement from her husband is now complete with divorce proceedings pending in this court. In August 1956, Kenneth Fausey visited with his daughter briefly at the home of his mother-in-law in Conemaugh under rather hostile cir-

cumstances, and in October, relatrix brought her to Morrisville to visit friends, on which occasion the Wileys and her father saw her only for a very short time. Therefore relatrix took her back to Conemaugh where she stayed until December 24, 1956. On the latter date, apparently by prearrangement and with the consent of relatrix, Kenneth Fausey brought her to the Wiley home for the Christmas holidays. She has been there continuously since, and respondents have refused to permit relatrix to take her back to Conemaugh. The within proceedings followed.

Kenneth R. Fausey, the father, does not seriously contend that the child should be awarded to him personally, since he is content that the present arrangement whereby the Wileys have her care and charge should continue. In this he is well advised for the record is totally silent as to how he could assume such responsibility himself in view of his working hours, limited living quarters, and possibly other considerations. It is therefore unnecessary to refer to his circumstances and his alleged connection with and responsibility for the troubled background of this broken family. Although he sees the child daily, he does not reside with her and apparently is little more than a visitor in the Wiley home insofar as his daughter's training and up-bringing are concerned. Accordingly, questions of his fitness as a parent need not be inquired into except to observe that even if all of relatrix's charges against him be taken as true, he has not thereby been painted so black a character as to be said to have forfeited his parental right of visitation.

The real issue presented in this case is the relative right of relatrix as against the Wileys. It is well established, of course, that usually and presumptively the needs of a child of tender years are best served by awarding care and custody to the natural mother:

Commonwealth ex rel. Grue v. Sanford, 183 Pa. Superior Ct. 32. In fact, it is on this principle that relatrix bases her entire case. Initially, her only evidence in chief was to show the family relationship and the refusal of respondents to deliver the child to her on demand. Since respondents accepted the onus of going forward with the evidence on this state of the record, and since relatrix offered evidence on her own behalf in rebuttal, we deem it unnecessary to decide whether her original showing, without more, would make out a prima facie case.

In any event, the usual rule of preference of the natural mother is not all-controlling, and we do not believe it is decisive in this case. As stated by Judge Woodside in Commonwealth ex rel. McNamee v. Jackson, 183 Pa. Superior Ct. 522, 525-526:

"It is basic and fundamental that the paramount consideration is the welfare of the children and that all other considerations, *including the rights of parents*, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well-being." (Italics supplied.) See also Commonwealth ex rel. McDonald v. McDonald, 183 Pa. Superior St. 411; Commonwealth ex rel. Moyer v. Sine, 7 Bucks 70, 72-73, and cases therein cited.

After a careful consideration of the record in this case, we have come to the considered judgment that Dennisene's well-being in all the respects considered controlling by the appellate courts as just noted, will be best served by leaving her with the Wileys and refusing relatrix' application for full custody.

From the physical point of view, their home and care seem much more satisfactory than would be provided in the home of relatrix' mother in Conemaugh. The Wileys live alone in a modern house with all conveniences and located in a residential section of Morrisville. Their residence, although small, is quite adequate

and only 11 years old; Dennisene has her own separate bedroom therein. The Wileys are 53 and 45 years of age, respectively, and in good health except for Mrs. Wiley's overweight condition for which she is receiving medical care. Despite relatrix' protestations to the contrary, they appear to have done well in rearing Dennisene as a happy, normal and well-disciplined child. Her manners and bearing in conversation with the hearing judge in the privacy of chambers were most favorable and impressive. The Wiley's morality and kindliness have not been challenged in the slightest even by relatrix, and their love and care for the little girl have quite apparently been reflected in her.

On the other hand, the home of relatrix' mother in Conemaugh, in which relatrix proposes to maintain the child, is overcrowded and old-fashioned without many of the facilities which modern life takes for granted. It is part of a double house in a typical mining and steel town, approximately 50 or 60 years old. Although it has running water, it has no bath and the only toilet is unenclosed in the open cellar which extends through under both sides of the house. According to relatrix' testimony, she and Dennisene would occupy a double bed in one of its three bedrooms, and the other two would be shared by relatrix' mother, two sisters and a brother. A married sister and her family live in the other half of the house. Relatrix' mother is a widow, 63 years of age and subject to high blood pressure; she is of unnaturalized Russian extraction. If and when relatrix should be employed, as she proposes, the full care of Dennisene when she would not be in school would fall upon the grandmother who never had any contact with the child whatsoever until June 1956. Although relatrix claimed that she took Dennisene to church and Sunday school in Conemaugh, it was not of the same faith either as that of

the rest of her family or as that which the child attended in Morrisville.

Similarly, from the viewpoint of the child's moral and emotional welfare, we believe that she is far better off with the Wileys. In the first place their residence and care have represented home and security to her for all her years of comprehension. Mrs. Wiley has raised her from an infant, nursed her in illness and loved her as her own. Although the child probably is not of an age where her own wishes are of much weight, the hearing judge was fully satisfied that she truly desires to remain in Morrisville and that at least for the present it would be a serious emotional shock from which she would have difficulty in recovering were she permanently removed from such familiar surroundings and placed in a foreign atmosphere with persons who are comparative strangers. Relatrix' uncorroborated suspicion that some or all of the respondents have poisoned her daughter's mind against her is totally unsubstantiated in fact, so far as the credible evidence discloses. To the contrary, the hearing judge was convinced from talking to Dennisene privately that she still has great regard for her mother, that she is conscious of the estranged situation of her parents and deeply concerned thereby, that no one has attempted to influence her against either of them, but that she nevertheless does not want to leave what she considers home.

Secondly, we are convinced that the challenges to relatrix' morality are largely founded in fact, and for that reason we entertain considerable apprehension that the effect thereof upon Dennisene in her future formative years would not be wholesome, to say the least, on a long term basis. We need not decide the issue of credibility as between relatrix and Mrs. Wiley on the subject of the former's alleged admission of

adultery to the latter. In any event, and whether or not she committed this actual offense on the one occasion in question, she admittedly did tell her husband that she had been going out with other men prior to their separation. Other evidence corroborates this admission and also discloses that she received letters and phone calls from male acquaintances under rather suspicious circumstances. It is also practically conceded that she has at least been attending social functions on occasion in Conemaugh with a named man who apparently was the subject of one of the arguments between relatrix and her husband before their separation.

Relatrix' lame excuse that she made the admission of keeping company with other men to her husband for the purpose of attempting to get him to correct his excessive drinking habits, despite the fact that they were not true, as well as her bland denials of all and every of the other charges against her, are simply incredible. In short, the situation provides no warrant whatsoever for our believing that she would be a proper parent for this child's up-bringing during her most impressionable and formative years.

Our decision that the child should remain with the Wileys for the present does not mean that we wish to deny either parent the right of reasonable visitation on a temporary basis. We trust that counsel may be able to arrange for such right to the mutual satisfaction of the parties. If that cannot be done, the court will entertain an application for a further hearing to resolve that question.

And now, September 13, 1957, custody of Dennisene Lynn Fausey is awarded to Elmer Wiley and Ada Wiley until the further order of the Court, subject to the reasonable right of visitation and temporary custody of the child by each of her parents, Kenneth R. Fausey and Margaret P. Fausey.